**STATE of Missouri, Respondent,**

v.

**Alphonso Denny DAVIS, Appellant.**

**No. 53204.**

Supreme Court of Missouri.

Division No. 1.

Feb. 10, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied March 10, 1969.

Norman H. Anderson, Atty. Gen., William L. Culver, Asst. Atty. Gen., Jefferson City, for respondent.

Dale Reesman, Boonville, for appellant.

STORCKMAN, Judge.

This appeal is by Alphonso Denny Davis from an order denying his motions under S.Ct. Rules 27.25 and 27.26, V.A.M.R., to set aside a judgment of conviction and to permit him to withdraw a plea of guilty to a charge of forcible rape. He is in the custody of the Department of Corrections of the State of Missouri serving the ninety-nine-year sentence imposed. The prisoner also filed motions to withdraw pleas of guilty and set aside other judgments of conviction and sentences entered on the same day and ordered to run concurrently with the sentence for rape as follows: ninety-nine years for robbery, two years for grand larceny, and five years for escaping jail. On a showing of indigency, counsel was appointed by the trial court. The same counsel has briefed and argued the case for the movant on appeal. Relying upon State v. Engberg, Mo., 391 S.W. 2d 868, 869[1], the trial court limited the evidentiary hearing to the motions directed at the plea, judgment and sentence entered on the charge of forcible rape. The trial court filed a memorandum opinion which included findings of fact and conclusions of law.

At the beginning of his present difficulties, the defendant Davis was twenty-one years of age and had been committed to Algoa Intermediate Reformatory where he was serving a ten-year sentence for robbery imposed on April 22, 1954, by the Cir-

cuit Court of the City of St. Louis. On February 6, 1956, while attending an institutional basketball game in Jefferson City, Davis escaped and was recaptured the following day. While at large he committed acts resulting in the convictions for armed robbery and for the rape of a housewife in Cole County, Missouri.

After his recapture a complaint was filed and he was brought before the Cole County Magistrate Court on February 8, 1956, at which time he requested a preliminary hearing and one was set for February 17, 1956. Later in the day, however, he appeared without counsel before the magistrate, stated that he had changed his mind and waived the preliminary hearing. An information charging the defendant with rape was filed in the Circuit Court of Cole County on February 9, 1956. On March 19, 1956, Davis escaped from the Cole County jail and on recapture was charged with the two additional offenses—escape and grand larceny. On March 30, 1956, Mr. Edgar M. Eagan of the Cole County Bar was appointed as counsel for the defendant in all four cases. After conferring with his client, Mr. Eagan filed a motion requesting a mental examination of the defendant. The motion was granted and an examination was made by Dr. Henry V. Guhleman, a psychiatrist of Jefferson City. The doctor's report found that the defendant was sane at the time of the examination as well as at the times of the commission of the offenses with which he was charged and that he was capable of helping in his own defense.

On April 27, 1956, the defendant applied for and was granted a change of venue; the four criminal cases were transferred to the Circuit Court of Cooper County on May 7, 1956. There were several conferences between Mr. Eagan and his client. Negotiations by Mr. Eagan with the prosecuting attorney of Cole County resulted in the state agreeing to waive the death penalty and to recommend that the sentences to be imposed on the four charges should run concurrently if the defendant saw fit

to plead guilty. Such a plea was entered on June 4, 1956, and sentences were imposed as above stated. Judge Dimmitt Hoffman, who presided in the Circuit Court of Cooper County at the time the pleas were entered and the sentences imposed, and his court reporter, Roy Snyder, both died prior to September 15, 1966, when the motions to vacate were filed. No transcript or notes of the court reporter relating to these proceedings could be found.

The statement of the points to be argued on appeal are: (1) although the only issue is the legality of the appellant's restraint, factors affecting his ability to understand the consequences of his plea have a direct bearing on his motion to vacate; (2) the trial court failed to fulfill the requirements of Rule 25.04 in its perfunctory examination of the defendant at the time of his arraignment and plea, and (3) the absence of the reporter's minutes of the proceedings at the time of arraignment and plea reinforces the importance of the prisoner's testimony.

 Motions under S.Ct. Rules 27.25 and 27.26 by a prisoner to withdraw a plea of guilty and set aside the judgment of conviction and sentence are in the nature of civil actions and the procedure before the trial court and on appeal is governed by the rules of civil procedure insofar as they are applicable. S.Ct. Rules 27.25 and 27.26(a) and (j); State v. Stidham, Mo., 403 S.W.2d 616, 618[3]; State v. Thompson, Mo., 324 S.W.2d 133, 135[2]. The prisoner has the burden of establishing his grounds for relief by a preponderance of the evidence. S.Ct. Rule 27.26(f).

 The appellate review of the trial court's ruling of a motion to set aside a conviction is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. S.Ct. Rule 27.26(j); Crosswhite v. State, Mo., 426 S.W.2d 67, 70[1]; State v. Mountjoy, Mo., 420 S.W.2d 316, 323[8]. The exercise of the power to set aside a

judgment of conviction and to permit the defendant to withdraw his plea of guilty is discretionary with the trial court and its action should not be disturbed on appeal except for an abuse of such judicial discretion. S.Ct. Rules 25.04 and 27.25; State v. Arnold, Mo., 419 S.W.2d 59, 61[2]; State v. Parker, Mo., 413 S.W.2d 489, 493[2], cert. den. 390 U.S. 906, 88 S.Ct. 823, 19 L. Ed.2d 874.

■ As previously stated, a transcript of the proceedings at the hearing of the plea of guilty was not available because of the death of the court reporter. The defendant's contention that the lack of such a transcript tends to "reinforce the importance" of his testimony is unsound if it is tended to claim some advantage for him as a party or special treatment as a witness. After sentence has been imposed, the court may set aside the judgment of conviction and permit the defendant to withdraw his plea only on a showing of manifest injustice. S.Ct. Rule 27.25. Regardless of the record made at the time the plea was entered, the issues before the court on a motion to vacate and withdraw a plea of guilty are whether the plea was in fact voluntarily made and with an understanding of the nature of the charge; and in determining the factual issues the court is clothed with the discretion ordinarily exercised by a trial court when acting as the trier of facts. State v. Mountjoy, Mo., 420 S.W.2d 316, 323[8]. In the absence of a transcript or the notes of the court reporter, the trial court must determine from the evidence otherwise adduced whether the defendant has sustained his burden of showing that he is entitled to the relief sought. State v. Keeble, Mo., 427 S.W.2d 404, 409[10].

Following his capture on February 7, 1956, Davis signed a written confession which was introduced in evidence at the 27.26 hearing. The statement was taken at Troop F Headquarters in the presence of and witnessed by two highway patrolmen, Roy F. Dix and Velmer Sauve, and Jefferson City Chief of Police Louis G. Rackers.

The confession described his escape from the Algoa Basketball Detail on the evening of February 6, how he spent the night in a stack of logs that had an opening in it, and further stated that the next morning he went into the basement of a nearby home, found a rifle, went upstairs, required a woman in the house to give him a pair of her husband's shoes and then raped her; he was captured soon after he left the house. The confession also stated that it was voluntarily made without threat or promise and with the knowledge that it could be used against him for prosecution.

The movant Davis testified that after he was arrested he was struck on the head with the small end of a pistol by a "plainclothes policeman"; that he was told by the officers at Patrol Headquarters that they would make him sign a confession; that a detective "smacked" him in the back of his head with his open hand two or three times; that a secretary typed the statement and "it contained the statement I gave them"; that later he was taken to the prosecutor's office in the courthouse and to a room across the hall from it where he was kicked on his ankle and shin ten or eleven times and that he signed the confession later that day because he was scared and had been threatened with lynching.

Davis further testified that on the following day he was confronted by the prosecutrix who first said he was not the man who raped her but later identified him as her attacker; that the prosecuting attorney told him at that time he would try to get him the gas chamber; that the complaint was read to him in magistrate court; that he had no schooling beyond the fourth or fifth grade except what he got in the penitentiary; that he wanted a jury trial and did not intend to plead guilty; that he only pleaded once which was to the rape charge and was sentenced on all four charges; that the charges were read to him as he stood before the bench by Judge Hoffman who did not explain them or state what the maximum sentences could be or that they could run consecutively or concurrently.

On cross-examination Davis testified he did not tell his attorney or anyone else that he had been abused and threatened before he signed the confession.

Police Chief Rackers and Highway Patrolmen Sauve and Dix were present during the time Davis was being questioned. All of them testified Davis was not struck, kicked, or threatened in any manner by them or by anyone in their presence. The patrolmen confirmed that Davis had a superficial cut on his head when they took him into custody which was cleaned and bandaged. He had spent the night in a pile of logs and was hiding under an automobile when prison guards apprehended him. After the confession was typed, Patrolman Sauve examined the statement with Davis; corrections, largely in the nature of typing mistakes, were made and initialled by Davis.

The Honorable James T. Riley, judge of the Circuit Court of Cole County at the time of the 27.26 hearing, was prosecuting attorney of Cole County when Davis committed the offenses in question and entered his guilty pleas. Both Mr. Riley, as prosecuting attorney, and Mr. Eagan, as Davis' attorney, had made notes and memoranda at the time of the transactions in question to which notes they referred while testifying. Judge Riley testified he had the prosecutrix view Davis, but in accordance with his instructions she said nothing in Davis' presence; he denied that he threatened Davis with the gas chamber and stated that he did not discuss punishment with Davis until after Mr. Eagan was appointed; no one abused or threatened Davis in his presence. Judge Riley further testified that he was sure that Davis understood the charges against him; that he recalled that Judge Hoffman "went to some detail explaining the charges" to Davis; that Davis pleaded guilty separately to all four charges and was sentenced after each plea before the next plea was taken because that was necessary to prevent the sentences running consecutively under the statute.

Mr. Eagan, a lawyer since 1933, with experience in criminal cases, was called as a witness by the movant and testified extensively. His testimony covers thirty-three pages of the transcript. Mr. Eagan first interviewed his client on April 5, 1956, on the third floor of the courthouse in Jefferson City. He explored the family background of Davis, his narcotic addiction, and the various difficulties in which he had been involved. As a result of the interview, Mr. Eagan obtained a mental examination of his client to determine if a plea of insanity could be interposed. Such a plea was precluded by the doctor's report which was made on May 7. Mr. Eagan had additional meetings with Davis on April 11, April 24, June 2, and June 4. On April 24 it was agreed that a change of venue should be taken from Cole County. Davis urged that this be done. Mr. Eagan learned of the confession and discussed it with his client. Davis made no complaint that he had been abused or coerced into making the confession. His only suggestion for defense to the rape charge was that he had laid the rifle aside when he had intercourse with the prosecutrix. Mr. Eagan interviewed Dr. Richard P. Dorris who had examined and treated the prosecutrix after the rape. Dr. Dorris told Mr. Eagan it would be inadvisable to try to interview the prosecutrix because of her mental condition resulting from the assault. Mr. Eagan also conferred in Jefferson City with the defendant's mother, his sister and a cousin. He talked with members of the Highway Patrol by telephone. He did not refuse to defend Davis in a jury trial but under the circumstances advised him to plead guilty because he had no defense. Mr. Eagan negotiated with Mr. Riley, the prosecuting attorney, and ultimately obtained an agreement that the state would waive the death penalty and have the sentences run concurrently if the defendant pleaded guilty. On June 2, Mr. Eagan advised Davis of the agreement and his client was greatly pleased; he said that was the best news he ever had. Arrangements

were then made to enter the pleas on June 4. Mr. Eagan had read the charges to his client, explained them and the range of punishment and the fact that the sentences could be made to run consecutively. Mr. Eagan did not believe Davis was insane but requested the mental examination because that appeared to be the only possible defense. Mr. Eagan further testified that the circuit judge of Cooper County explained the charges, treated them separately and made them run concurrently as agreed and as recommended by the prosecuting attorney. That in substance was the pertinent evidence at the hearing of the 27.26 motion. There is little room for disagreement as to the applicable law. The parties largely cite and rely upon the same cases and court rules.

The trial court made an extensive review of the evidence and, inter alia, found as a matter of fact that the defendant voluntarily and without any coercion made and signed the written confession on February 7, 1956; that the nature of the charges against the defendant were adequately explained to him by his attorney before the hearing and by Judge Hoffman at the hearing and that the defendant understood the explanations and that he knew what he was doing and voluntarily and without fear or coercion entered his plea of guilty on June 4, 1956; and that the defendant had the effective assistance of legal counsel.

On this latter issue the court further found and commented: "Defendant contends that he did not have adequate assistance of counsel. To this we cannot agree. The Court finds from the record that Mr. Eagan gave adequate and diligent service to the defendant. What defense does a defendant make to the charge of forcible rape when defendant is identified and voluntarily confesses his guilt? Mr. Eagan tried to develop the defense of insanity but his own doctor destroyed that defense. He was able to get the State to waive the death penalty. He did all that could be done in behalf of his client. No other lawyer could have done any better."

 The trial court considered every complaint made by the defendant, found all issues against the defendant, and held that the defendant had failed to establish his claim for relief. The findings of the trial court have abundant support in the record and we approve them. We have examined all contentions made by appellant on appeal and find them to be without merit. The findings, conclusions and judgment of the trial court are not clearly erroneous. S.Ct. Rule 27.26(j); State v. Mountjoy, Mo., 420 S.W.2d 316, 324[9]; State v. Holland, Mo., 411 S.W.2d 181; State v. Good, Mo., 403 S.W.2d 594, 599[7]; State v. Cooper, Mo., 403 S.W.2d 619, 622[4, 5]. The trial court did not err in overruling the defendant's motions.

Accordingly the judgment is affirmed.

SEILER, J., and BILLINGS, Special J., concur.

HENLEY, P. J., not sitting.